UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD JAMES CROMER, #211902,                Case No. 2:22-cv-75

                Plaintiff,                Hon. Hala Y. Jarbou
                                       Chief U.S. District Judge

    v.

HEIDI WASHINGTON, et al.,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies (ECF No. 44), Plaintiff's motion to amend his complaint (ECF No. 53), Defendants' motion to strike Plaintiff's sur-reply to Defendants' motion for summary judgment (ECF No. 54), and Plaintiff's motion "to strike the initial summary judgment response or/and accept or join the second response" (ECF No. 57).

Plaintiff — state prisoner Edward James Cromer— filed suit pursuant to 42 U.S.C. § 1983 on January 31, 2022.  In Cromer's verified complaint, he alleges that while he was incarcerated at the Marquette Branch Prison (MBP) in Marquette, Michigan, Defendants violated his rights under the Americans with Disabilities Act (ADA), the Fourteenth Amendment, and the First Amendment.  More specifically, Cromer says that Michigan Department of Corrections (MDOC) Director

Washington, MBP Warden Huss, MBP Resident Unit Manager (RUM) Pelky, and MBP RUM Erickson violated his rights under the Equal Protection Clause and the ADA when they implemented the Start Unit[1] at MBP, thereby denying mentally ill prisoners yard privileges and access to religious services among other needs. (ECF No. 22, PageID.197-198.)  Additionally, Cromer alleges that Corrections Officer (CO) Ricklefs placed him in administrative segregation in retaliation for his protected speech.  (*Id.*, PageID.199.)

On April 28, 2023, Defendants moved for summary judgment, asserting that Cromer did not properly exhaust his administrative remedies.  (ECF No. 44, PageID.310.)  Defendants contended that Cromer did not exhaust the grievance process with respect to his claims related to the Start Unit, nor did Cromer raise the issue of retaliation at his misconduct hearing against CO Ricklefs.  (ECF No. 45, PageID.325-326).

Cromer responded on May 18, 2023, arguing that his claims relating to the Start Unit were non-grievable under MDOC policy.  (ECF No. 46, PageID.386.)

---

[1]    According to MDOC Director's Office Memorandum (DOM) 2021-17, effective January 1, 2021, Start Units are general population housing units that serve as "an alternative placement for eligible prisoners who would otherwise be classified to Administrative Segregation."  MDOC DOM 2021-17 (eff. Jan. 1, 2021).  Start Units provide more structure than traditional general population housing units, with prisoners "mov[ing] through progressive levels as the prisoner demonstrates positive behavior and program participation with the goal of reintegrating them back into a traditional general population setting. . . ."  *Id.*  Among the "target prisoner population groups for placement in a Start Unit" are "prisoners who have been diagnosed with serious mental illness, as defined by Mental Health Services policy, procedure and protocol, whose disruptive behavior would warrant reclassification to administrative segregation." *Id.*

Furthermore, Cromer argued that the MDOC's administrative remedies were unavailable to him because he is an individual diagnosed with a serious mental illness. (*Id.*)

On June 15, 2023, Defendants replied. (ECF No. 51.) On June 29, 2023, Cromer filed an unauthorized sur-reply (ECF No. 52), which Defendants have since moved to strike (ECF No. 54). In response to Defendants' motion to strike, Cromer asks this Court to either strike his initial response to the motion for summary judgment or combine his response and his sur-reply. (ECF No. 57.) In addition, Cromer asks for leave to amend his complaint. (ECF No. 53.)

As an initial matter, the undersigned respectfully recommends that the Court grant Defendants' motion to strike Cromer's unauthorized sur-reply (ECF No. 54), deny Cromer's motion "to strike the initial summary judgment response or/and accept or join the second response" (ECF No. 57), and strike Cromer's unauthorized sur-reply (ECF No. 52). Although he proceeds pro se, Cromer is still expected to know and abide by the Local and Federal Rules, including Western District of Michigan Local Civil Rule 7.2(c), which requires parties to obtain leave from this Court before filing a sur-reply.

The undersigned next recommends that the Court deny Defendants' motion for summary judgment. (ECF No. 44.) In the undersigned's opinion, there are genuine issues of material fact bearing on whether Cromer's claims regarding the conditions of the Start Unit were grievable, and whether his mental conditions rendered the MDOC's administrative remedies unavailable to him.

Finally, the undersigned recommends that the Court deny Cromer's motion for leave to amend his complaint (ECF No. 53) because it is futile; Cromer's proposed amended complaint fails to state a new claim upon which relief can be granted.

## II.    Additional Relevant Procedural History

On January 31, 2022, Cromer and four other inmates[2] in the Start Unit at MBP filed an unsigned complaint entitled "motion to grant class action." (ECF No. 1.) That document alleged that the MBP Start Unit operated in an unconstitutional manner. (*Id.*, PageID.2.) On February 11, 2022, the group of inmates filed an amended complaint adding inmate Teywon Beckham, #595348, as a plaintiff in the case, and providing affidavits from each individual prisoner, including Cromer. (ECF No. 9, PageID.61.)

On April 1, 2022, the Court dismissed Charles Demario Johnson from the case for failing to pay his filing fee (ECF No. 20) and severed the claims of the five remaining plaintiffs (ECF No. 21., PageID.181). Cromer filed a second amended complaint on April 14, 2022. (ECF No. 22, PageID.189.) On April 29, 2022, the Court issued a screening opinion partially dismissing Cromer's claims regarding the Start Unit. (ECF No. 24, PageID.221.) The remaining claims are: (1) Cromer's Fourteenth Amendment Equal Protection claim relating to the Start Unit against Director Washington, Warden Huss, RUM Pelky and RUM Erickson, (2) Cromer's ADA claim relating to the Start Unit against Direct Washington, Warden Huss, RUM Pelky and

---

[2]    Including Charles Demario Johnson, #857142, Marcus Allen Howell, #872975, Dimitrius Alexander Clark, #868212, and Chritopher Hammond, #670336. (ECF No. 1, PageID.1.)

RUM Erickson, and (3) Cromer's First Amendment retaliation claim against Defendant Ricklefs.  (*Id.*, PageID.222.)

## III.  Factual Allegations

Cromer's factual allegations against Director Washington, Warden Huss, RUM Pelky, and RUM Erickson were set forth in this Court's April 29, 2022, screening opinion.  There, the Court provided in pertinent part:

> Plaintiff alleges that he has been diagnosed with several mental disorders, including experiencing delusions and hallucinations, depression, crying spells, and "substantial disorder of thoughts and moods." (ECF No. 22, PageID.194.) According to Plaintiff, Defendants Washington, Huss, Pelky, and Erickson conspired to have him placed in the Start Unit "as a form of weaponry."(*Id.*) Plaintiff claims that he was transferred five or six times in 13 months "as a result of [his] advocacy to uphold[] the U.S. Constitution." (*Id.*) Ultimately, he was declared mentally ill and placed in the Start Unit. (*Id.*) Plaintiff is prescribed a "plethora of medications," including Haldol, Benadryl, and Trazodone. (*Id.*) Plaintiff asserts that Defendant Huss had him placed on Haldol because he "continued to discuss with [her] while making rounds 'that she was suppose[d] to summon the sta[te] police and report a crime was being committed because she ha[d] no record of cause.'" (*Id.*, PageID.195.)
>
> Plaintiff was placed in MBP's Start Unit approximately two years ago. (*Id.*, PageID.198.)
>                                     . . . .
>
> Plaintiff asserts that his placement in the Start Unit is not justified because he is not disruptive. (ECF No. 22, PageID.196.) He "has never made an administrative admission to [a] 'mental unit.'" (*Id.*) Plaintiff claims that Defendants are "exaggerating mental health as a way to hide constitutional rights." (*Id.*) Plaintiff avers that the Start Unit is "operated as 'a secret prison.'" (*Id.*) He alleges that there is no graduation or ending period, which causes psychological stress. (*Id.*) According to Plaintiff, inmates in the Start Unit go "4-5 days straight every other week [with] no showers [and] no yard." (*Id.*, PageID.197.) He claims that on other weeks, prisoners with diseases such as scabies will be brought to the Start Unit to shower. (*Id.*) Plaintiff avers that during

COVID-19 outbreaks, staff members in the Start Unit "at no time [wore] protective gear." (*Id.*)

Plaintiff states that he has been classified as the unit porter, but that he rarely does his porter duties because staff "are on the computer watching 'movies' and wish not to be disturbed." (*Id.*) He avers that he is not able to attend the law library or religious services, that he is forced to use a "dog cage" during yard, and that he is limited to two 15-minute calls per day. (*Id.*) The Security Classification Committee (SCC) does not operate in the Start Unit. (*Id.*) Inmates are "subjected to punishment for unwritten rules." (*Id.*, PageID.198.) Moreover, the Start Unit has no garbage cans or bags. (*Id.*)

. . . .

Plaintiff goes on to allege that on April 8, 2021, he was having a "quiet conversation" with other prisoners. (*Id.*, PageID.199.) Plaintiff was telling the others that the fact that he is in prison is "illegally repugnant to the United States Constitution because [of] no record of show cause." (*Id.*) He claims that the Start Unit is "a very small unit so the prison staff monitor and listen to all conversations amongst the 22 [participants]." (*Id.*) Defendant Ricklefs began calling Plaintiff names and told him to "shut the f*** up." (*Id.*) Plaintiff continued to 'hold the discussion." He was subsequently taken to administrative segregation for threatening behavior. (*Id.*) Plaintiff avers that this was retaliation for his speech. (*Id.*, PageID.199–200.) On April 14, 2021, Plaintiff appeared for a hearing. (*Id.*, PageID.200.) Plaintiff requested that Defendant Huss appear as a witness. (*Id.*) According to Plaintiff, Defendant Huss would have vouched for the fact that Plaintiff was discussing his own records. (*Id.*) He claims that Defendant Mohrman denied his request. (*Id.*) Plaintiff was found guilty and sentenced to 21 days' loss of privilege (LOP) status. (*Id.*)

(ECF No. 24, PageID.222-225.)

## IV.    Motions to Strike (ECF Nos. 54, 57)

The undersigned first addresses Defendants' motions to strike Cromer's sur-reply (ECF No. 54) and Cromer's motion "to strike the initial first summary judgment response or/and accept or join the second response."  (ECF No. 57, PageID.522.).

Rule 7.2(c) of this Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response.  W.D. Mich. LCivR 7.2(c).  Under the same rule, "[t]he court may permit or require further briefing."  *Id.*  Cromer never requested leave from the Court to file his sur-reply.  Pro se litigants are expected to know and comply with the Federal Rules of Civil Procedure as well as the Local Rules.  *See Fields v. Cnty. of Lapeer*, No. 99-2191, 2000 WL 1720727, at *2 (6th Cir. Nov. 8, 2000); *Williams Huron Gardens 397 Tr. v. Waterford Twp.*, No. 18-12319, 2019 WL 659009, at *1 (E.D. Mich. Jan. 26, 2019) ("Though plaintiffs are representing themselves, they are nevertheless, expected to know and adhere to the rules governing litigation in the court.").  Therefore, the undersigned respectfully recommends that the Court grant Defendants' motion to strike Cromer's sur-reply.

The undersigned further recommends that the Court deny Cromer's motion "to strike the initial first summary judgment response or/and accept or join the second response." (ECF No. 57.)  In his motion, Cromer asks this Court to either consider his sur-reply to Defendants' motion for summary judgment instead of his response or consider the two briefs as one.  (*Id.*, PageID.522.)  Cromer avers that he was unaware that he had to ask the Court for leave to file a sur-reply.  (*Id.*)  But once again, Cromer is expected to know and abide by this Court's Local Rules.  Furthermore, Cromer admits that "both responses to the Defendant's summary judgment [are] about the

same." (*Id.*, PageID.522-523.)  The undersigned therefore sees no reason to consider Cromer's sur-reply in ruling on Defendants' motion.[3]

## V.    Motion for Summary Judgment (ECF No. 44)

The undersigned next turns to Defendants' motion for summary judgment based on Cromer's failure to exhaust his administrative remedies.

### a.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[4] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[3]    "[I]t is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).

[4]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### b. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter*

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.

In rare circumstances, the grievance process will be considered unavailable.  For example, the grievance process may be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent.  *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.   MDOC Policy Directive 03.02.130 at ¶¶ U, DD.   The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain

the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.  For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[5] the inmate must raise the issue during the initial misconduct hearing.  *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).[6]  If the inmate is claiming to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue.  *Id.*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process).  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on

---

[5]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.105 ¶ B (eff. date 07/01/18).

[6]    In *Siggers*, the Sixth Circuit evaluated the exhaustion of a misconduct-related retaliation claim by looking to the misconduct appeal process.  652 F.3d at 693-94. However, the undersigned acknowledges that in an unpublished opinion written the same year, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130."  *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011).  But it is published decisions that are binding within the Circuit, and *Reynolds-Bey* is not a published decision.  6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)).

retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R&R adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[7]

---

[7]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

### c. ADA and Fourteenth Amendment Claims

Defendants first argue that Cromer did not properly exhaust his claims against Director Washington, Warden Huss, RUM Pelky, and RUM Erickson regarding the Start Unit.  (ECF No. 45, PageID.324-325.)  Defendants aver that Cromer did not exhaust any grievances against them relating to the Start Unit prior to filing suit. (*Id.*)  Based on the Step III Grievance Report that Defendants provided the Court, the undersigned agrees.  (*See* ECF No. 45-3, PageID.341-365.)  But Cromer argues that his claims relating to the Start Program were non-grievable under MDOC policy. (ECF No. 46, PageID.388.)

Paragraph J of MDOC Policy Directive 03.02.130 sets forth the circumstances under which a Grievance Coordinator must reject a grievance.  Significantly, the Grievance Coordinator must reject a prisoner's grievance if:

7.  Two or more prisoners and/or parolees have jointly filed a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest.

8.  The prisoner is grieving <u>content</u> of the policy or procedure except as it was specifically applied to the grievant.   If a prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.105 "Prisoner Housing Unit Representatives/Warden's Forum."

MDOC P.D. 03.02.130 at ¶ J(7)-(8).  Cromer asserts that when the prisoners who jointly filed the original complaint submitted grievances regarding the Start Unit, their grievances were rejected in accordance with these subparagraphs.  (ECF No. 46, PageID.388-389.)

Grievances attached to the first amended complaint in this matter confirm Cromer's assertions.  (*See* ECF No. 9-2.)  For example, on January 9, 2022, MBP inmate Dimitrus Clark filed a grievance complaining that Start Unit staff were not

utilizing unit porters to clean the unit or pass out necessary supplies including food trays.  (*Id.*, PageID.75.)  The Step I response to that grievance is shown below:

RESPONSE (Grievant Interviewed?  ☐ Yes  ☒ No    If No, give explanation.  If resolved, explain resolution.)

Your grievance has been rejected per PD-03.02.130 as a joint grievance. Paragraph-F of said policy states in short, two or more prisoners may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest. On 1/11/2022 three grievances MBP 21/01/00080/28K, MBP 21/01/00081/28K, and MBP 21/01/00082/28K, pertaining to F-block not using porters to clean and pass food have been received by three different prisoners as a form of organized protest. In addition, these issues are non grievable because you are grieving the content of department wide policy and procedures particularly MBP OP 04.03.102 Housekeeping plan and F-unit MBP start program post orders-Exempt. Grievance rejected according to policy

| Respondent's Signature | Date | Reviewer's Signature | Date |
|---|---|---|---|
| Q. Bolton | 1/11/2022 | K. PELKY | 1/11/2022 |
| Respondent's Name (Print) | Grievance coordinator | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: 1/12/2022 | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |

(*Id.*)

MBP inmate Teywon Beckham's January 9, 2022, grievance regarding the non-use of inmate porters in the Start Unit was rejected for the same reasons.  (*Id.*, PageID.76.)   As was the January 10, 2022, grievance regarding unsanitary procedures in the Start Unit submitted by Cromer himself.  (*Id.*, PageID.78-79.)

Also included in these grievances was a January 8, 2022, grievance in which Cromer complained that Start Unit staff were forcing inmates in the Start Unit to endure different lighting than inmates in other units.  The Step I response to that grievance is shown below:

Grievance Identifier Number:  MBP 22/01/00098/27B

Your grievance is being rejected because you are grieving the content of F-unit MBP Start Program- Post orders (Exempt) #7 and Post #5 Post orders-(Exempt), which is a non-grievable issue according to PD 03.02.130. Grievance rejected according to policy.

Q. Bolton
Grievance Coordinator; MBP

K. Pelky
Assistant Deputy Warden; MBP

16

(*Id.*, PageID.74.)

As set forth above, prisoners "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel*, 89 F. App'x at 971.   Defendants did not address the non-grievable nature of Cromer's claim in their brief in support of their motion, or in their reply to Cromer's response.  (ECF No. 51, PageID. 464-466.) In the undersigned's opinion, a reasonable jury could determine that Cromer's claims related to the Start Unit were non-grievable, and that he was therefore not required to exhaust the grievance process with respect to those claims.

But even if Cromer's claims regarding the Start Unit were grievable, Cromer argues administrative remedies were unavailable to him due to his serious mental illness. (ECF No. 46, PageID.390.)  The Sixth Circuit recently suggested that, in some cases, an inmate's individual capacities may render administrative remedies unavailable.  *Coopwood v. Wayne County, Michigan*, No. 22-1485, 2023 WL 4558199 at *6 (6th Cir. 2023) (collecting cases in which courts found the grievance process unavailable based on individual circumstances such as mental capacity).

In *Coopwood*, an inmate diagnosed with bipolar disorder and schizophrenia filed suit alleging excessive force by state actors.  *Id.* at *1.  The district court granted summary judgment in favor of the defendants due to the plaintiff's failure to exhaust the grievance process.  *Id.* at *3.  The Sixth Circuit reversed and remanded the district court's decision because it found a genuine issue of material fact as to whether jail staff thwarted Coopwood's exhaustion attempts.  *Id.* at *6.  However, the Court also

noted the possibility that the plaintiff's mental health conditions rendered the grievance process unavailable to her.  *Id.*

Other circuits have specifically ruled that an individual's ability to navigate the grievance process must be determined on a case-by-case basis. The Seventh Circuit recently held that "when assessing whether the grievance process could have been understood by a particular prisoner, the inquiry must consider individual capabilities." *Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023) (citing *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018)).  Likewise, the Ninth Circuit has stated that "the critical question is whether there is something in Plaintiff's particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Eaton v. Blewett*, 50 F.4th 1240, 1245 (quoting *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014)) (cleaned up).

Turning back to the case at hand, Cromer says he experienced delusions, depression, hallucinations, cry-spells, and substantial disorder of thoughts and mood. (ECF No. 22, PageID.194.)  Cromer's medical records confirm that MDOC providers diagnosed Cromer with psychotic symptoms including paranoia, delusions, and disorganized thinking.  (ECF No. 22-1, PageID.215.)  Moreover, the MDOC found Cromer's condition to be serious enough to warrant placement in the Start Unit at MBP.  (ECF No. 22, PageID.194.)  Once again, Defendants failed to address Cromer's assertion that his mental capacity rendered the grievance process available.  In the undersigned's opinion, there is a genuine issue as to whether the grievance process was un-navigable, and thus, unavailable to Cromer under these circumstances.

In sum, the undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment with respect to Cromer's ADA and Fourteenth Amendment claims because there are genuine issues of material fact bearing on the availability of the grievance process.

### d. First Amendment Retaliation Claim

Defendants next argue that Cromer did not exhaust available remedies regarding his retaliation claim against CO Ricklefs.  (ECF No. 45, PageID.326.) Defendants assert that Cromer was required to raise his retaliation claim against CO Ricklefs at the hearing for his Class I Misconduct Ticket.  (*Id.*)  Defendants say that he did not, supporting their assertion with the Misconduct Hearing Report shown below:

| CLASS I MISCONDUCT HEARING REPORT | | | | Rev. 10/10 |
|---|---|---|---|---|
| Prisoner **211902** | Prisoner Name **Cromer** | Facility Code **MBP** | Lock **D=8** | Violation Date **04/08/2021** |
| Charge(s) **Threatening Behavior** | | | | |
| If Charge Changed by Hearing Officer | | Plea ☐ Guilty  ☒ Not Guilty | | |
| Misconduct Report Read to and Discussed with Prisoner ☐ (check if applies) | | No Hearing Investigation Requested ☐ (check if applies) | | |
| Hearing Investigation Read to and Discussed with Prisoner ☐ (check if applies) | | | | |

EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT

Per C/O Marta at 0828 hours the prisoner, when asked if he was going to his hearing, said he was not; I take that as a refusal and hold this hearing in his absence.  MDOC PD 03.03.105(H)

This ALJ then read the misconduct, entered a not guilty and noted the prisoner sent the H.I. a statement.  He questioned the ALJ's ability to hear this charge and requested as witnesses the MBP Warden and MBP legal coordinator.  The prisoner presented a 4 pg. written statement.

The misconduct sanction screening and assessment forms.

(ECF No. 45-4, PageID.367.)

As set forth above, a prisoner must attend the misconduct hearing and assert retaliation to exhaust a misconduct-related retaliation claim.  *See Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).  The Misconduct Hearing Report shows that Cromer did not so much as attend the hearing.  Nevertheless, the

undersigned finds that there is a genuine issue of material fact as to the availability of this administrative remedy.

Once again, Cromer avers that his mental conditions rendered him unable to navigate the MDOC's administrative remedies. (ECF No. 46, PageID.393.) As above, the undersigned finds that a reasonable jury could determine that Cromer's individual capacity rendered administrative remedies unavailable to him. *See Coopwood,* 2023 WL 4558199, at *6. Therefore, the undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment as to Cromer's retaliation claim against CO Ricklefs.

## VI.    Motion to Amend (ECF No. 53)

The undersigned finally addresses Cromer's July 10, 2023, motion to amend. (ECF No. 53.)

Cromer moves for leave to "amend and clarify Legal Claim I." In his proposed amended complaint, the new "Legal Claim I" is a purported Fourteenth Amendment Due Process and First Amendment claim against Director Washington for implementing MDOC Policy Directive 03.03.105, which Cromer identifies as the "disciplinary policy." (ECF No. 53-1, PageID.491.) Cromer asserts that the policy is "void for overbreadth" and "void for vagueness." (*Id.*) He complains that the policy allowed CO Ricklefs to file a retaliatory misconduct ticket against him and that the policy denied him due process because it was "enforced without a record of cause or by lack of jurisdiction." (*Id.*, PageID.492.)

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The Court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). The Court must have knowledge of the substance of the proposed amendment to determine whether "justice so requires" an amendment. *Roskam Baking Co v. Lanham Mach.*, 288 F.3d 895, 906 (6th Cir. 2002).

The undersigned respectfully recommends that the Court deny Cromer's motion to amend because it is futile. Though Cromer newly cites MDOC Policy Directive 03.03.150 as the problem policy directive, the allegations surrounding his new claim are strikingly similar to those made with respect to MDOC Policy Directive 01.04.130 in Cromer's second-amended complaint. The Court determined that those allegations consisted of "nothing more than unintelligible legalistic gobbledygook," (ECF No. 24, PageID.244 (citing *Cromer v. Snyder*, No. 1:17-cv-94, 2017 WL 1130032, at *1 (W.D. Mich. Mar. 27, 2017)), and accordingly dismissed the claim. In the undersigned's opinion, the allegations that Cromer now seeks to add to his complaint also consist of "unintelligible legalistic gobbledygook." Cromer fails to indicate in any meaningful way why MDOC Policy Directive 03.03.105 is unconstitutional in his proposed amended complaint.

## VII.   Recommendation

As an initial matter, the undersigned recommends the Court grant Defendants' motion to strike Cromer's sur-reply (ECF No. 54) and strike Cromer's sur-reply (ECF No. 52) because Cromer failed to obtain leave from the Court before filing the sur-reply.  The undersigned further recommends that the Court deny Cromer's motion "to strike the initial summary judgment response or/and accept or join the second response" (ECF No. 57) because by Cromer's own admission his response and sur-reply are essentially the same.

Next, the undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment (ECF No. 44) because there are genuine issues of material fact bearing on whether the MDOC's administrative procedures were available to Cromer.

Finally, the undersigned recommends that the Court deny Cromer's motion for leave to amend his complaint (ECF No. 53) because it is futile; Cromer's proposed amended complaint fails to state a new claim upon which relief can be granted.

If the Court accepts this recommendation, Cromer's ADA and Fourteenth Amendment claims against Director Washington, Warden Pelky, RUM Huss, and RUM Erickson, as well as his First Amendment retaliation claim against CO Ricklefs, will all remain.


Dated:  August 8, 2023                                   /s/ *Maarten Vermaat*
                                                                          MAARTEN VERMAAT
                                                                          U. S. MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).