UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD JAMES CROMER,

    Plaintiff,

v.

HEIDI WASHINGTON, et al.,

    Defendants.

_____/

Case No. 2:22-cv-75

Hon. Hala Y. Jarbou

## ORDER

    Plaintiff Edward James Cromer, a state prisoner, brings this civil action under 42 U.S.C. § 1983 against several Michigan Department of Corrections (MDOC) and Marquette Branch Prison (MBP) employees. Cromer's allegations stem from MBP's implementation of—and Cromer's placement into—the "Start Unit," an alternative general population housing program for certain prisoners, including those diagnosed "with serious mental illness." (*See* R&R 2 n.1, ECF No. 62.) Cromer alleges in his verified complaint that the Defendants violated his rights under the Americans with Disabilities Act, the Fourteenth Amendment, and the First Amendment. More specifically, Cromer alleges that placement into the Start Unit results in the denial to mentally ill prisoners of yard privileges, religious service access, and other necessities; and, further, that Defendants placed him into administrative segregation in retaliation for protected speech.

    On August 8, 2023, Magistrate Judge Maarten Vermaat issued a Report and Recommendation (R&R) recommending the disposition of several motions before the Court. First, the R&R recommends granting Defendants' motion (ECF No. 54) to strike Cromer's unauthorized sur-reply (ECF No. 52). Second, the R&R recommends denying Cromer's motion to replace or join his initial response to summary judgment with his sur-reply (ECF No. 57). Third, the R&R

recommends denial of Defendants' motion for summary judgment (ECF No. 44). Finally, the R&R recommends denying Cromer leave to file an amended complaint (ECF No. 53). Defendants partially object to the recommendation on their summary judgment motion (ECF No. 63). No other objections have been filed, and the deadline to do so has passed.

As an initial matter, the Court has reviewed the unchallenged portions of the R&R and concludes that it correctly analyzes the issues and makes sound recommendations. Thus, those recommendations related to Cromer's sur-reply and amended complaint will be approved and adopted as the opinion of the Court. That leaves Defendants' motion for summary judgment.

Defendants move for summary judgment, arguing that Cromer failed to properly exhaust his administrative remedies as to all claims. Cromer responds that no administrative remedy was available to him because his mental illness rendered him unable to navigate the grievance process. Cromer also responds that his ADA and Fourteenth Amendment claims were non-grievable. The R&R agrees with Cromer on all points, and Defendants object only to the recommendation regarding his mental capacity and the navigability of administrative remedies.

This Court will focus on the subject of Defendants' objection—the unavailability of the grievance process as a result of Cromer's mental illness. Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

As the R&R notes (R&R 17), the Sixth Circuit has suggested, but has not decided, that a prisoner's serious mental illness may render a prison's administrative grievance process unavailable to him. *See Coopwood v. Wayne Cnty.*, 74 F.4th 416, 424 (6th Cir. 2023). Other

2

circuits have explicitly recognized this exhaustion defense, determining its applicability on a case-by-case basis. *See, e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023); *Rucker v. Giffen*, 997 F.3d 88, 94 (2d Cir. 2021); *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022).

Cromer's proffered evidence shows he suffers from mental illness. According to his verified complaint, he experiences "delusion[s], depressi[on], hallucinati[ons], cry spells, [and] substantial disorder of thoughts and moods." (Am. Compl. ¶ 7, ECF No. 22.) MDOC records support this, noting diagnosed problems of "paranoia[,] delusions[, and] disorganized thinking)[.]" (Treatment Plan, ECF No. 22-1, PageID.215.) Defendants did not initially offer evidence refuting this, nor did they even address the argument. The magistrate judge thus concluded "there is a genuine issue as to whether the grievance process was un-navigable, and thus, unavailable to Cromer under these circumstances." (R&R 18.)

Defendants disagree with the R&R on two points. First, Defendants argue that Sixth Circuit precedent requires Cromer to submit expert testimony to survive summary judgment, which he has not done. Second, Defendants argue that even if Cromer is not required to submit expert testimony, the evidence he has submitted fails "to show that serious mental illness prevented him from pursuing administrative remedies." (Defs.' Objs. 2-3.) Both points are ultimately unpersuasive.

First, as noted, the Sixth Circuit has not explicitly recognized this mental capacity defense to exhaustion. Thus, any suggestion that the Sixth Circuit has adopted standards for how the defense must be substantiated is a non-starter. Defendants point to *Phillips v. Tangilag*, 14 F.4th 524 (6th Cir. 2021), to support this argument. They argue that, under *Phillips*, "a prisoner alleging an Eighth Amendment denial-of-medical [care] claim . . . must present expert testimony" and that "Cromer here is asserting a mental health condition that is dispositive as to whether his Eighth

3

Amendment claim proceeds[.]" (Defs.' Objs. 2.) But Cromer is not asserting an Eighth Amendment denial of medical care claim. Rather, he is asserting claims under the ADA and the Fourteenth Amendment, as well as a retaliation claim under the First Amendment. Defendants' reliance on *Phillips* is misplaced, and they fail to explain why the approach for determining the substantive elements of a denial of medical care claim should be imported to the realm of administrative exhaustion for different substantive claims.

Next, Defendants argue that even if Cromer need not submit expert testimony on this issue, the evidence he has submitted is insufficient to create a genuine dispute of material fact. This is the first time they have made this argument. "Absent compelling reasons," parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Nevertheless, Defendants' argument fails on the merits.

Cromer has put forth evidence that he suffers from mental illness via his verified complaint and corroborating medical records. Defendants do not offer evidence countering this. Cromer has also pointed out the apparent irony that Defendants "diagnosed Cromer as 'mentally-ill' but now . . . argue that [he] is mentally competent and capable to accurately adhere to vague and 'gray area' policies and procedures[.]" (Pl.'s Resp. to Summ. J. 8, ECF No. 46.) Defendants do not address this. Rather, Defendants suggest that Cromer's evidence reveals mental health issues that were resolved by the time he would have gone through the grievance process, and that his actions and other assessments suggest he could navigate the process.

Drawing all justifiable inferences in favor of Cromer, the medical records he proffers do not reflect a clear resolution of his mental health issues. Defendants suggest that the February 14, 2020 update to the "Psychotic Symptoms" section of the medical record (Treatment Plan,

4

PageID.215) reveals "a lack of symptoms[.]" (Def.'s Objs. 3.) But the update does not state "a lack of symptoms." Rather, it states "[n]o deterioration" and "no recent misconducts[.]" (Treatment Plan, PageID.215.) "No deterioration" does not necessarily mean "resolved." In fact, the status of "Psychotic Symptoms" was marked as "active" with the status update noting "maintained." (*Id.*) Presumably, the record would show some indication that the symptoms moved to an inactive or resolved status if Cromer indeed no longer experienced them. At the very least, this is a justifiable assumption the Court must make in Cromer's favor. The other arguments Defendants make related to Cromer's proffered medical records suffer from similar flaws. In short, Defendants are asking the Court to draw inferences in their favor on their own summary judgment motion. The Court cannot and will not oblige. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Similarly, Defendants' arguments that Cromer's own actions and a separate disciplinary-related mental health assessment reveal him to be capable of navigating the grievance process would require this Court to resolve inferences to Cromer's detriment. Both of these arguments stem from a misconduct hearing during which Cromer was assessed as capable of understanding "right from wrong" and "capable of following departmental rules and expectations." (Misconduct Hr'g Packet 9, ECF No. 45-4.) After an adverse ruling, Cromer filed for a rehearing and took at least some claims through the grievance process. (*See generally* Grievance Report, ECF No. 45-3.)

But understanding right from wrong and how to follow rules governing conduct does not necessarily suggest an ability to navigate an administrative grievance process. The latter may require a higher degree of functioning than the former. And just because Cromer could follow the grievance process related to claims stemming directly from a misconduct hearing does not mean

5

that Cromer can navigate the grievance process for all types of claims.  It is one thing to file an administrative appeal following an adverse process initiated by the prison and quite another to file a grievance related to broader Start Unit conditions or a prison officer's retaliatory conduct.  While Defendants' arguments may ultimately be persuasive to a trier of fact, they simply have not met their burden at this stage.

Based on the foregoing, the Court rejects Defendants' objections to the recommendations contained in the R&R.  Because the Court finds that the R&R makes sound recommendations as to all pending motions, the Court will adopt the R&R in full.  All claims and all defendants remain.

Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 62) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motion to strike Cromer's sur-reply (ECF No. 54) is **GRANTED**.

**IT IS FURTHER ORDERED** that Cromer's motion to strike his initial summary response and/or accept or join the second response (ECF No. 57) is **DENIED**.

**IT IF FURTHER ORDERED** that Cromer's motion for leave to amend his complaint (ECF No. 53) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 44) is **DENIED**.

Dated: October 17, 2023                    /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE