UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD JAMES CROMER #211902,         Case No. 2:22-cv-00075

    Plaintiff,                              Hon. Hala Y. Jarbou
                                                    Chief U.S. District Judge

    v.

HEIDI E. WASHINGTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment. (ECF No. 94.)

Plaintiff — state prisoner Edward James Cromer — filed suit pursuant to 42 U.S.C. § 1983 on January 31, 2022. In Cromer's verified complaint, he alleged that while he was incarcerated at the Marquette Branch Prison (MBP) in Marquette, Michigan, Defendants violated his rights under the Americans with Disabilities Act (ADA), the Fourteenth Amendment, and the First Amendment. More specifically, Cromer says that Michigan Department of Corrections (MDOC) Director Washington, MBP Warden Huss, MBP Resident Unit Manager (RUM) Pelky, and MBP RUM Erickson violated his rights under the Equal Protection Clause and the

ADA when they implemented the START Unit[1] at MBP, thereby denying mentally ill prisoners yard privileges and access to religious services, among other needs. (ECF No. 22, PageID.197-198.) Additionally, Cromer alleged that Corrections Officer (CO) Ricklefs placed him in administrative segregation in retaliation for his protected speech. (*Id.*, PageID.199.)

Defendants move for summary judgment on Cromer's claims. They note that Cromer is no longer in the START Unit and that he is no longer confined at MBP. The records before the Court show that Cromer was transferred out of MBP in August 2022. Cromer's ADA and Fourteenth Amendment equal protection claims seek only injunctive and declaratory relief from MDOC Director Washington, MBP Warden Huss, and MBP RUMs Pelky and Erickson for his placement in the MBP START Unit. Cromer essentially asks the Court to remove him from the MBP START Unit and to end the program. The MBP START Unit was terminated by the MDOC and no longer exists. Defendants therefore contend that Cromer's ADA and Fourteenth Amendment claims seeking injunctive and declaratory relief are moot because he is

---

[1]   According to MDOC Director's Office Memorandum (DOM) 2021-17, effective January 1, 2021, START Units are general population housing units that serve as "an alternative placement for eligible prisoners who would otherwise be classified to Administrative Segregation." MDOC DOM 2021-17 (eff. Jan. 1, 2021). START Units provide more structure than traditional general population housing units, with prisoners "mov[ing] through progressive levels as the prisoner demonstrates positive behavior and program participation with the goal of reintegrating them back into a traditional general population setting. . . ." *Id.* Among the "target prisoner population groups for placement in a START Unit" are "prisoners who have been diagnosed with serious mental illness, as defined by Mental Health Services policy, procedure and protocol, whose disruptive behavior would warrant reclassification to administrative segregation." *Id.*

no longer confined at MBP in the START Unit and because the MBP START Unit no longer exists. The undersigned concludes that Cromer's ADA and Fourteenth Amendment equal protection claims are moot. Accordingly, it is respectfully recommended that the Court dismiss Cromer's claims.

Defendant Ricklefs argues that Cromer cannot establish the causation element of his retaliation claim. Ricklefs argues that once Cromer made threats of violence, she was required by MDOC Policy Directive 03.03.105 (eff. 7/1/2018) to write Cromer a Class I misconduct ticket for threatening behavior.[2] Further, Ricklefs argues that Cromer was found guilty of the Class I misconduct ticket after a hearing and upon rehearing, thus precluding him from asserting that he did *not* commit the threatening behavior offense. The undersigned concludes that Ricklefs has established that she would have written the Class I misconduct ticket regardless of Cromer's early alleged protect conduct. Accordingly, it is respectfully recommended that the Court find that no genuine issue of material fact exists to support the causation element of Cromer's retaliation claim and dismiss the retaliation claim against Defendant Ricklefs.

---

[2] This PD states that "[a] Misconduct Report shall be written if the behavior constitutes a non-bondable Class I misconduct, as identified in Attachment A. (ECF No. 95-14, PageID.799.) In addition, Attachment A lists threatening behavior as a non-bondable misconduct. (*Id.*, PageID.817.)

## II.    Additional Relevant Procedural History

On January 31, 2022, Cromer and four other inmates[3] in the START Unit at MBP filed an unsigned complaint entitled "motion to grant Class action." (ECF No. 1.) That document alleged that the MBP START Unit operated in an unconstitutional manner. (*Id.*, PageID.2.) On February 11, 2022, the group of inmates filed an amended complaint adding inmate Teywon Beckham, #595348, as a plaintiff in the case, and providing affidavits from each individual prisoner, including Cromer. (ECF No. 9, PageID.61.)

On April 1, 2022, the Court dismissed Charles Demario Johnson from the case for failing to pay his filing fee (ECF No. 20) and severed the claims of the five remaining plaintiffs (ECF No. 21., PageID.181). Cromer filed a second amended complaint on April 14, 2022. (ECF No. 22, PageID.189.) On April 29, 2022, the Court issued a screening opinion partially dismissing Cromer's claims regarding the START Unit. (ECF No. 24, PageID.221.)

On October 17, 2023, the Court denied Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies. (ECF No. 64.) In addition, on January 26, 2024, the Court denied Cromer's motion for a temporary restraining order and preliminary injunction. (ECF No. 88.)

The remaining claims are: (1) Cromer's Fourteenth Amendment Equal Protection claim relating to the START Unit against Director Washington, Warden

---

[3]    Including Charles Demario Johnson, #857142, Marcus Allen Howell, #872975, Dimitrius Alexander Clark, #868212, and Chritopher Hammond, #670336. (ECF No. 1, PageID.1.)

Huss, RUM Pelky and RUM Erickson, (2) Cromer's ADA claim relating to the START Unit against Direct Washington, Warden Huss, RUM Pelky and RUM Erickson, and (3) Cromer's First Amendment retaliation claim against Defendant Ricklefs. (*Id.*, PageID.222.)

### III. Factual Allegations and Relief Sought

Cromer's factual allegations against Director Washington, Warden Huss, RUM Pelky, and RUM Erickson were set forth in this Court's April 29, 2022, screening opinion. There, the Court provided in pertinent part:

> Plaintiff alleges that he has been diagnosed with several mental disorders, including experiencing delusions and hallucinations, depression, crying spells, and "substantial disorder of thoughts and moods." (ECF No. 22, PageID.194.) According to Plaintiff, Defendants Washington, Huss, Pelky, and Erickson conspired to have him placed in the START Unit "as a form of weaponry."(*Id.*) Plaintiff claims that he was transferred five or six times in 13 months "as a result of [his] advocacy to uphold[] the U.S. Constitution." (*Id.*) Ultimately, he was declared mentally ill and placed in the START Unit. (*Id.*) Plaintiff is prescribed a "plethora of medications," including Haldol, Benadryl, and Trazodone. (*Id.*) Plaintiff asserts that Defendant Huss had him placed on Haldol because he "continued to discuss with [her] while making rounds 'that she was suppose[d] to summon the sta[te] police and report a crime was being committed because she ha[d] no record of cause.'" (*Id.*, PageID.195.)
>
> Plaintiff was placed in MBP's START Unit approximately two years ago. (*Id.*, PageID.198.)
>
> . . . .
>
> Plaintiff asserts that his placement in the START Unit is not justified because he is not disruptive. (ECF No. 22, PageID.196.) He "has never made an administrative admission to [a] 'mental unit.'" (*Id.*) Plaintiff claims that Defendants are "exaggerating mental health as a way to hide constitutional rights." (*Id.*) Plaintiff avers that the START Unit is "operated as 'a secret prison.'" (*Id.*) He alleges that there is no graduation or ending period, which causes psychological stress. (*Id.*) According to Plaintiff, inmates in the START Unit go "4-5 days straight

5

> every other week [with] no showers [and] no yard." (*Id.*, PageID.197.) He claims that on other weeks, prisoners with diseases such as scabies will be brought to the START Unit to shower. (*Id.*) Plaintiff avers that during COVID-19 outbreaks, staff members in the START Unit "at no time [wore] protective gear." (*Id.*)
>
> Plaintiff states that he has been classified as the unit porter, but that he rarely does his porter duties because staff "are on the computer watching 'movies' and wish not to be disturbed." (*Id.*) He avers that he is not able to attend the law library or religious services, that he is forced to use a "dog cage" during yard, and that he is limited to two 15-minute calls per day. (*Id.*) The Security Classification Committee (SCC) does not operate in the START Unit. (*Id.*) Inmates are "subjected to punishment for unwritten rules." (*Id.*, PageID.198.) Moreover, the START Unit has no garbage cans or bags. (*Id.*)
>
> . . . .
>
> Plaintiff goes on to allege that on April 8, 2021, he was having a "quiet conversation" with other prisoners. (*Id.*, PageID.199.) Plaintiff was telling the others that the fact that he is in prison is "illegally repugnant to the United States Constitution because [of] no record of show cause." (*Id.*) He claims that the START Unit is "a very small unit so the prison staff monitor and listen to all conversations amongst the 22 [participants]." (*Id.*) Defendant Ricklefs began calling Plaintiff names and told him to "shut the f*** up." (*Id.*) Plaintiff continued to 'hold the discussion." He was subsequently taken to administrative segregation for threatening behavior. (*Id.*) Plaintiff avers that this was retaliation for his speech. (*Id.*, PageID.199–200.) On April 14, 2021, Plaintiff appeared for a hearing. (*Id.*, PageID.200.) Plaintiff requested that Defendant Huss appear as a witness. (*Id.*) According to Plaintiff, Defendant Huss would have vouched for the fact that Plaintiff was discussing his own records. (*Id.*) He claims that Defendant Mohrman denied his request. (*Id.*) Plaintiff was found guilty and sentenced to 21 days' loss of privilege (LOP) status. (*Id.*)

(ECF No. 24, PageID.222-225.)

Cromer listed his requested relief in his amended complaint. (ECF No. 22, PageID.211-12.) In general terms, he sought closure of the START Program at MBP; a declaration that MDOC Policy Directive 01.04.130 (pertaining to prisoner

6

commitment files) and M.C.L. § 791,234 (a statute pertaining to sentencing and parole) are unconstitutional; several requests relating to his case; and compensatory damages against Ricklefs and several other defendants.

Cromer's prayer for relief is shown below:

**PRAYER FOR RELIEF**

A. GRANT INJUNCTION ORDERING THE START UNIT TO BE CLOSED DOWN BASED ON FINDING THAT THE START PROGRAM IS UNCONSTITUTIONAL AT MARQUETTE BRANCH PRISON.

B. GRANT INJUNCTION RELIEF FOR CROMER TO BE PLACED IN PROPER PLACEMENT.

C. GRANT TEMPORARY RESTRAINING ORDER TO END START UNTIL THE COURT OR FEDERAL MENTAL HEALTH DEPARTMENT CAN DO A WALK THROUGH WITH THE APPOINTMENT OF COUNSEL AND THAT MBP START UNIT CANNOT MEET CONSTITUTIONAL REQUIREMENTS.

D. GRANT PRELIMINARY INJUNCTION AND/OR DECLARATORY JUDGMENT FINDING THAT POLICY DIRECTIVE 01.04.130 AND PROCEDURE MCL 791.234 TO BE VAGUE AND UNCONSTITUTIONAL BECAUSE NO NAME OF A CLAIMANT OR RECORD OF WHO ASSERTED A CONSTITUTIONAL LOSS OR ENTRY, THIS HAVE THE EFFECTS OF DENYING 1. LIBERTY INTEREST 2. LAW AND PROCESS; 3. "ADEQUATE NOTICE." 4. AGENCIES NOR INSTITUTIONS **CANNOT** MAKE ACCUSATIONS, ACCUSATIONS MUST COME FROM SOMEONE WHO RUN THE RISK OF PERJURY!!!

E. GRANT INJUNCTION RELIEF ORDER A NEW PAROLE APPLICATION PROCEDURE MANDATING AMALGAM ELEMENTS TO BE STATED IN PRISON RECORDS OR LIFER'S FILE REVIEW TO PROTECT A LIBERTY INTEREST IN ADEQUATE NOTICE.

F. GRANT INJUNCTIVE RELIEF ORDERING THAT WARDEN HUSS CAN BE CALLED AS A WITNESS TO A MISCONDUCT REPORT.

```
G. GRANT DEMAND OF JURY TRIAL IN RESPECTS TO DEFENDANT'S RICKLEFS,
MOHRMAN, KESSLER, AND MINTHORN.


H. GRANT MEDIATION PROGRAM FOR FAST RESOLVE.


I. AWARD $50,000 EACH IN COMPENSATORY DAMAGES AGAINST RICKLEFS,
KESSLER, MINTHORN, AND MOHRMAN, AND AWARD $100,00 EACH IN PUNITIVE
DAMAGES AGAINST RICKLEFS, KESSLER, AND MINTHORN
```

(ECF No. 22, PageID.211.)

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V. Cromer's ADA and Fourteenth Amendment claims and Requests for Declaratory and Injunctive Relief

Defendants argue that Cromer's ADA and Fourteenth Amendment claims are moot because he sought only injunctive or declaratory relief to end MBP's START program and to be removed from the program. As noted above, Cromer brought claims under the ADA and the Equal Protection Clause of the Fourteenth Amendment against MDOC Director Washington, MBP Warden Huss, MBP RUM Pelky, and MBP RUM Erickson. Cromer did not seek compensatory damages from them. Instead, his lawsuit sought only injunctive and declaratory relief as to these claims. (ECF No. 22, PageID.211-12.)

The record before the Court shows that Cromer was taken out of the START program and transferred from MBP to ECF (Oaks Correctional Facility) in August of 2022. (ECF No. 95-10 (transfer order dated 8/9/2022).) The MBP START program was discontinued in September of 2022. (ECF No. 95-11, PageID.781 (Affidavit of Erickson).) According to the MDOC's online Offender Tracking Information System (OTIS), Cromer is currently housed at the Bellamy Creek Correctional Facility. At his deposition, Cromer testified that he had no complaints about his Level IV confinement at his current prison – Bellamy Creek. (ECF No. 95-12, PageID.790.)

The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. September 20, 1989); *Williams v. Ellington*,

9

936 F.2d 881 (6th Cir. 1991). Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496.

Contrary to Cromer's assertion, even if he was transferred back to MBP, he could not be placed in the START program there because it no longer exists. In his response brief, Cromer argues that he could be placed in the START program at other prisons and denied rights. (ECF No. 99, PageID.834-836.) But Cromer asserts that his rights were violated while he was in the START program at MBP. Cromer mentioned that the Ionia prison had a START program, but he specifically limited his complaints of impropriety to the way the START program was managed at MBP. (*Id.*) In fact, Cromer asserted that the policy appears legitimate as written. (*Id.*)

Cromer's request for declaratory relief is also moot. The focus of his complaint is the START program at MBP, a claim that has now become moot based on the facts

of this case. The Supreme Court has noted that "we are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Accordingly, in the opinion of the undersigned, Cromer's request that the MBP START program should be shut down because it violated his rights under the ADA, equal protection, and the Fourteenth Amendment is now moot, because the program no longer exists. Thus, his request for injunctive and declaratory relief should be denied as moot.

## VI. Retaliation

Cromer says that Defendant Ricklefs retaliated against him by writing the April 8, 2021, misconduct report for Threatening Behavior. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

Defendant Ricklefs argues that Cromer cannot prove the causation element of his alleged retaliation claim because a Class I hearing officer found Cromer guilty of engaging in threatening behavior. Cromer, therefore, is precluded from denying that he engaged in threatening behavior. Further, Ricklefs argues that she had no choice under MDOC policy but to issue the misconduct ticket.

The Sixth Circuit test for determining whether factual findings made within a Class I misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)) (rejecting the checkmate doctrine but upholding the preclusive effect of major misconduct hearing findings when appropriate factors are met). Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts. *Maben v. Thelen*, 887 F.3d 252, 259

(6th Cir. 2018), (*citing Peterson*, 714 F.3d at 911-13).   The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied. *Peterson*, at 912-14.

The Misconduct Hearing Report states:

**CLASS I MISCONDUCT HEARING REPORT**  Rev. 10/10

| Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| 211902 | Cromer | MBP | D=8 | 04/08/2021 |

**Charge(s)**
Threatening Behavior

If Charge Changed by Hearing Officer

Plea: ☐ Guilty  ☒ Not Guilty

Misconduct Report Read to and Discussed with Prisoner  ☐ (check if applies)
Hearing Investigation Read to and Discussed with Prisoner  ☐ (check if applies)
No Hearing Investigation Requested  ☐ (check if applies)

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Per C/O Marta at 0828 hours the prisoner, when asked if he was going to his hearing, said he was not; I take that as a refusal and hold this hearing in his absence.  MDOC PD 03.03.105(H)
This ALJ then read the misconduct, entered a not guilty and noted the prisoner sent the H.I. a statement.  He questioned the ALJ's ability to hear this charge and requested as witnesses the MBP Warden and MBP legal coordinator.  The prisoner presented a 4 pg. written statement.
The misconduct sanction screening and assessment forms.

**FINDINGS:**
The warden and legal coordinator are not necessary.  There is no indication from the reporter or the prisoner what they were present at the time of the incident so are not witnesses.  They could provide no insight into what occurred.  Likewise the prisoner's claim this ALJ cannot hear this charge is not correct.  Michigan Statute, administrative rules and policies charge the ALJ to preside at misconduct hearings for the MDOC.

**REASONS FOR FINDINGS**
Threatening Behavior (012) MDOC PD 03.03.105 Words, actions or other behavior which expresses an intent to injure or physically abuse another person.  There are no secret proceedings.  The prisoner had the right to attend his hearing and declined per the above officer.  He was interviewed and given the opportunity of requesting evidence.  He provided a statement and did not specifically address the alleged threat to the officer.
I conclude based upon the report which is logical and persuasive and the lack of any persuasive evidence to the contrary that he is guilty.  He said he was just released from a suicide cell.  It is not clear if that was his location at the time of this incident.  However, even if it was, the prisoner's mental health professional said that he was responsible for his actions.  Therefore his status at the time is not significant.  The prisoner yelled at the officer telling her "I will fucking kick your ass you slut ass bitch!  I will throw shit in your face when I get to you!"  This was a comment which expressed his intent to physically attack and injure the officer by kicking her ass to then throwing feces in her face."  This was a threat to her physical well-being.  The charge is correct.

**PROPERTY DISPOSITION** (for contraband see PD 04.07.112)
N/A

Copied  4-19-2021  EH

**FINDINGS**
Charge No. 1  ☒ Guilty  ☐ Not Guilty  ☐ Dismissed  Reporting Code  012

(ECF No. 45-4, PageID.367.)   Cromer appealed this decision, and his appeal was denied because the hearing officer found that Cromer made the comment with "intent

13

to physically attack and injure the officer by kicking her ass to then throwing feces in her face." (ECF No. 45-5, PageID.379.)

The hearing officer resolved a disputed issue of fact – whether Cromer had threatened the officer. The hearing officer found that Cromer made a threatening statement. Although Cromer argues that he was not provided the opportunity to present evidence, the facts show that Cromer had an opportunity to litigate the issue.

Cromer was interviewed on the misconduct ticket by a hearing investigator. (*Id.*, PageID.369.) Cromer informed the investigator that he wanted to write out a statement. (*Id.*) Cromer provided a handwritten statement to the hearing officer. (*Id.*, PageID.370-373.) Even though Cromer refused to attend the hearing, the hearing officer considered Cromer's statement in making his decision. In the opinion of the undersigned, Cromer had an opportunity to litigate the issue regarding whether he made a threatening statement and he is now precluded from asserting otherwise in this case.

Nevertheless, this Court "must determine whether a reasonable jury could find that, even though" Cromer engaged in threatening conduct, Defendant Ricklefs issued the misconduct ticket due to his protected speech. *White v. McKay*, No. 22-192 (6th Cir., Nov. 17, 2023). It is the opinion of the undersigned that no reasonable jury could conclude that Ricklefs issued a threatening behavior misconduct due to Cromer's protected speech. Under MDOC policy Ricklefs was required to write Cromer a Class I misconduct ticket due to his threatening statement. The policy provides that "[a] Misconduct Report shall be written if the behavior constitutes a

14

non-bondable Class I misconduct, as identified in Attachment A." (ECF No. 95-14, PageID.799 (Policy Directive 03.03.105(D)).)  This includes threatening behavior such as "[w]ords, actions, or other behavior which expresses an intent to injure or physically abuse another person." (*Id.*, PageID.817 (Attachment A).)  Cromer does not allege or show that Ricklefs usually let threatening behavior slide without consequence.  *Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (explaining that a plaintiff could still establish retaliatory motive where the misconduct charge was true by, for example, showing that he regularly engaged in the misconduct without consequence up until the protected conduct).  In the opinion of the undersigned, Defendant Ricklefs has met her burden of establishing that she would have written the threatening misconduct ticket regardless of Cromer's protected conduct.

### VII.  Qualified and Sovereign Immunity

Defendant Ricklefs also argues that she is entitled to qualified immunity because it cannot be disputed that Cromer's threatening behavior, and not his protected conduct, was the reason she issued the misconduct ticket.  Defendant Ricklefs's claim for qualified immunity is largely redundant.  Ricklefs argues that because she did not violate Cromer's constitutional rights she is entitled to qualified immunity.[4]  In any event, the undersigned agrees; because there are no genuine issues of material fact and it is the undersigned's opinion that Defendant Ricklef did not violate Cromer's First Amendment rights, it is the undersigned's opinion that

---

[4]   In other words, Defendants do not argue that the rights at issue were not clearly established.

Defendant Ricklef is entitled to qualified immunity in her individual capacity. *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

Defendant Ricklefs's claim for sovereign immunity is different. Ricklefs argues that she is entitled to sovereign immunity in her official capacity as to Cromer's claim for monetary damages regardless of whether the claim has merit.[5]

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). As such, it is the undersigned's opinion that Cromer's claim against Ricklefs in her official capacity for

---

[5]   Cromer does not seek monetary damages against Defendants Washington, Huss, Pelky, or Erickson.   (ECF No. 22, PageID.211-212.)

monetary damages are properly dismissed in accordance with the Eleventh Amendment.

### VIII. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   April 16, 2024                                              /s/ *Maarten Vermaat*
                                                                                     MAARTEN VERMAAT
                                                                                     U.S. MAGISTRATE JUDGE