UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD JAMES CROMER,

    Plaintiff,

v.

    Case No. 2:22-cv-75

    Hon. Hala Y. Jarbou

HEIDI E. WASHINGTON, et al.,

    Defendants.

_____/

# OPINION

James Cromer, a state prisoner, brings this § 1983 action against several individuals associated with the Michigan Department of Corrections ("MDOC"). Much of his complaint centers on the START Unit ("START") at Marquette Branch Prison ("MBP"), where he was previously incarcerated. Cromer alleges that Defendants violated his rights under the Americans with Disabilities Act ("ADA") and the Fourteenth Amendment by implementing and placing him into START. For this, he seeks declaratory and injunctive relief. Cromer further alleges that Defendant Ricklefs violated his First Amendment rights when she disciplined him in retaliation for voicing concerns about START to fellow inmates. He seeks monetary damages from Ricklefs.

On April 16, 2024, Magistrate Judge Maarten Vermaat issued a Report and Recommendation ("R&R") (ECF No. 104) recommending that the Court grant Defendants' motion for summary judgment (ECF No. 94) and dismiss the case. Before the Court are Cromer's objections to the R&R (ECF No. 105). For the reasons discussed herein, the Court will adopt the magistrate judge's recommendation.

# I. LEGAL STANDARDS

### A. R&R Review Standard

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Because Cromer is proceeding pro se, the Court will construe his objections more liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). Further, summary judgment on affirmative defenses is appropriate. *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 337 (6th Cir. 2017). "For an affirmative defense, the defendant has the burden to show that it is entitled to the defense." *Id*.

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## II.  BACKGROUND

This action initiated with additional claims, plaintiffs, and defendants.  All that remains is Cromer's Fourteenth Amendment claims against Defendants Washington, Huss, Pelky and Erickson, as well as his First Amendment retaliation claim against Ricklefs.

**A. Factual Allegations**

The Court recounted Cromer's factual allegations at length in its April 29, 2022 screening opinion:

> Plaintiff alleges that he has been diagnosed with several mental disorders, including experiencing delusions and hallucinations, depression, crying spells, and "substantial disorder of thoughts and moods."  (ECF No. 22, PageID.194.) According to Plaintiff, Defendants Washington, Huss, Pelky, and Erickson conspired to have him placed in the Start Unit "as a form of weaponry."  (*Id.*) Plaintiff claims that he was transferred five or six times in 13 months "as a result of [his] advocacy to uphold[] the U.S. Constitution."  (*Id.*)  Ultimately, he was declared mentally ill and placed in the Start Unit.  (*Id.*)  Plaintiff is prescribed a "plethora of medications," including Haldol, Benadryl, and Trazodone.  (*Id.*) Plaintiff asserts that Defendant Huss had him placed on Haldol because he "continued to discuss with [her] while making rounds 'that she was suppose[d] to summon the start police and report a crime was being committed because she ha[d] no record of cause.'" (*Id.*, PageID.195.)
>
> Plaintiff was placed in MBP's Start Unit approximately two years ago.  (*Id.*, PageID.198.)  The Start Unit is an alternative to administrative segregation:
>
>> The targeted prisoner population groups for the placement in a Start Unit [include]:
>>
>> Prisoners who have been diagnosed with serious mental illness, as defined by Mental Health Services policy, procedure and protocol, whose disruptive behavior would warrant reclassification to administrative segregation.
>>
>>     . . .
>
> MDOC Director's Office Memorandum (DOM) 2021-17 (eff. Jan. 1, 2021).
>
> Plaintiff asserts that his placement in the Start Unit is not justified because he is not disruptive.  (ECF No. 22, PageID.196.)  He "has never made an administrative admission to [a] 'mental unit.'"  (*Id.*)  Plaintiff claims that Defendants are "exaggerating mental health as a way to hide constitutional rights." (*Id.*)  Plaintiff avers that the Start Unit is "operated as 'a secret prison.'"  (*Id.*)  He alleges that

3

> there is no graduation or ending period, which causes psychological stress. (*Id.*) According to Plaintiff, inmates in the Start Unit go "4-5 days straight every other week [with] no showers [and] no yard." (*Id.*, PageID.197.) He claims that on other weeks, prisoners with diseases such as scabies will be brought to the Start Unit to shower. (*Id.*) Plaintiff avers that during COVID-19 outbreaks, staff members in the Start Unit "at no time [wore] protective gear." (*Id.*)
>
> . . .
>
> Plaintiff goes on to allege that on April 8, 2021, he was having a "quiet conversation" with other prisoners. (*Id.*, PageID.199.) Plaintiff was telling the others that the fact that he is in prison is "illegally repugnant to the United States Constitution because [of] no record of show cause." (*Id.*) He claims that the Start Unit is "a very small unit so the prison staff monitor and listen to all conversations amongst the 22 [participants]." (*Id.*) Defendant Ricklefs began calling Plaintiff names and told him to "shut the f*** up." (*Id.*) Plaintiff continued to 'hold the discussion." He was subsequently taken to administrative segregation for threatening behavior. (*Id.*) Plaintiff avers that this was retaliation for his speech. (*Id.*, PageID.199–200.) On April 14, 2021, Plaintiff appeared for a hearing. (*Id.*, PageID.200.) Plaintiff requested that Defendant Huss appear as a witness. (*Id.*) According to Plaintiff, Defendant Huss would have vouched for the fact that Plaintiff was discussing his own records. (*Id.*) He claims that Defendant Mohrman denied his request. (*Id.*) Plaintiff was found guilty and sentenced to 21 days' loss of privilege (LOP) status. (*Id.*)

(4/29/2022 Op. 2-5, ECF No. 24.)

### B. The R&R

#### 1. Fourteenth Amendment and ADA Claims—Prospective Relief

Cromer seeks only injunctive and declaratory relief for his ADA and Fourteenth Amendment claims. He primarily seeks an "injunction ordering the START unit to be closed[,]" for himself "to be placed in proper placement[,]" and a "temporary restraining order to end START until the Court or Federal Mental Health Department can do a walk through with the appointment of counsel and that [START] cannot meet constitutional requirements." (Am. Compl. ¶¶ A-C, ECF No. 22.)

The magistrate judge concluded that Cromer's claims are moot. Cromer was removed from the START program and transferred from MBP to Oaks Correctional Facility in August 2022.

4

(Transfer Order, ECF No. 95-10.) START at MBP was discontinued in September 2022. (Erikson Aff. ¶ 4, ECF No. 95-11.) Cromer is now incarcerated at Bellamy Creek Correctional Facility; he has testified that he has no complaints about his confinement there. (Cromer Dep. 19, ECF No. 95-12.) Thus, because Cromer's requested relief centers on a program which no longer exists and a prison in which he is no longer housed, the R&R recommends dismissing these claims as moot.

### 2. First Amendment Retaliation Claim—Damages

Cromer seeks monetary damages against Ricklefs. Cromer alleges Ricklefs wrote him a misconduct ticket in retaliation for his expression of concern about START on April 8, 2021. Ricklefs did indeed write Cromer a misconduct ticket on that date. (Misconduct Report, ECF No. 45-4.) She described the violation as follows:

> Prisoner Cromer #211902 yelled directly at me from approximately three feet away with closed fists and veins popping out of his neck "I will fucking kick your ass you slut ass bitch! I will throw shit in your face when I get you!"

(*Id.*) In a Class I Misconduct Hearing, Cromer was found guilty of making threatening statements to Ricklefs. (Misconduct Hearing Report, ECF No. 45-4.) Cromer appealed the decision and was denied. (Request for Rehearing, ECF No. 45-5.)

To succeed on a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Regarding the final element, the Court employs a burden-shifting framework:

> The analysis of motive in retaliation claims is well-developed. Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Id.* at 399.

The magistrate judge focused on the final element.  He concluded that "no reasonable jury could conclude that Ricklefs issued a threatening behavior misconduct due to Cromer's protected speech . . ." in part because "[u]nder MDOC policy Ricklefs was required to write Cromer a Class I misconduct ticket due to his threatening statement." (R&R 14.)  Indeed, MDOC Policy requires that a "Misconduct Report shall be written if the behavior constitutes a non-bondable Class I misconduct, as identified in Attachment A."  (Policy Directive 03.03.105 ¶ D, ECF No. 95-14.)  Included in Attachment A is threatening behavior such as "[w]ords, actions, or other behavior which expresses an intent to injure or physically abuse another person."  (Policy Directive 03.03.105A ¶ 012, ECF No. 95-14.)

Further, the magistrate judge noted that, "The hearing officer resolved a disputed issue of fact—whether Cromer had threatened the officer." (R&R 14.)  The magistrate judge concluded that this factual finding should be given preclusive effect.  This conclusion follows from *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), as summarized in *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018):

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a dispute of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts."

*Maben*, 887 F.3d at 259 (citing *Peterson*, 714 F.3d at 911-13).  A major misconduct hearing, which includes a Class I Misconduct Hearing, satisfies the first and last criteria if the other two criteria are satisfied.  *Peterson*, 714 F.3d at 912-14.

The magistrate judge concluded all four criteria were satisfied.  Cromer argued that he was not given adequate opportunity to litigate the factual dispute but the R&R notes that he was interviewed by the investigator (Hearings Investigation Report, ECF No. 45-4), provided a

6

handwritten statement to the hearing officer (Cromer's Statement, ECF No. 45-4), and ultimately appealed his decision. Although Cromer refused to attend the actual hearing, the hearing officer considered his written statement in making his decision. (Misconduct Hearing Report, PageID.367.)

To summarize, Ricklefs argues she wrote Cromer a misconduct ticket due to his threatening behavior, *not* because of his protected conduct. She argues that she was required to do so according to MDOC policy. The hearing officer found Cromer guilty of the threatening behavior alleged by Ricklefs. Because Cromer had an opportunity to participate in this hearing, and because the hearing otherwise met the requirements of *Peterson*, the magistrate judge concluded that the hearing officer's findings must be given preclusive effect. Thus, because Ricklefs "can show that [s]he would have taken the same action in the absence of the protected activity"—i.e., because of Cromer's threatening comments—the magistrate judge concluded "[s]he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 394.

### 3. Qualified and Sovereign Immunity

Ricklefs argues she is entitled to both qualified and sovereign immunity. The magistrate judge agreed on both issues. "Ricklefs's claim for qualified immunity is largely redundant [of her merits defense] . . . because there are no genuine issues of material fact and it is the undersigned's opinion that [she] did not violate Cromer's First Amendment rights, . . . Ricklefs is entitled to qualified immunity in her individual capacity." (R&R 16.)

The sovereign immunity argument is slightly different. The magistrate judge concluded that because § 1983 did not abrogate sovereign immunity and because the State of Michigan has not consented to civil rights suit in federal court, "Cromer's claim against Ricklefs in her official capacity for monetary damages [is] properly dismissed in accordance with the Eleventh

Amendment." (R&R 16-17 (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)).)

### III. CROMER'S OBJECTIONS

Cromer lodges several objections to the R&R; none is persuasive.

**A. Monetary Damages for Fourteenth Amendment and ADA Claims**

Cromer appears to take issue with the R&R's focus on the prospective nature of the relief sought for his Fourteenth Amendment and ADA Claims. In his objections, Cromer states, "Neither Defendants nor [the R&R] explain how Cromer would have known that for all the injuries and harms to his constitutional [rights,] monetary damages were available when not given the opportunity to know by Defendants?" (Pl.'s Objs. 4.) He now "ask[s] this Court to award monetary damages." (*Id.*)

Objections to an R&R are not a proper vehicle to amend the complaint, and the Court declines to allow Cromer to do so. Fed. R. Civ. P. 15(a)(2). Further, Cromer's suggestion that he could not have known of the availability of monetary damages for violations of his constitutional and statutory rights rings hollow—he seeks damages against Ricklefs in the very same complaint. And a review of the complaint reveals that Cromer could ably conduct the legal research necessary to litigate his claims. Thus, even if the Court were to consider allowing Cromer to amend his complaint at this late stage, he has failed to convince the Court that "justice so requires" amendment. This objection will be overruled.

**B. START Program Mootness**

Cromer objects to the conclusion that his START-related claims are moot because START may still exist at other MDOC prisons. But Cromer's complaint focused solely on the operation of START at MBP. For instance, he notes "on paper the aim & purpose [of START] appear legitimate" but the "Marquette Branch Prison 'START Unit' in reality is operated as 'a secret

8

prison[.]'" (Compl. ¶ 15.) Cromer does not argue that the START unit facially violates the Fourteenth Amendment or the ADA and has adduced no evidence of other START units that are both currently active and operating in an unlawful manner. The START unit at MBP is the only one sufficiently raised in the instant action and no longer exists; Cromer's claim is moot. This objection is unpersuasive and will be overruled.

### C. Misconduct Hearing

Several of Cromer's objections relate to the misconduct hearing that followed Ricklefs's issuance of a misconduct ticket. The overall thrust of his objections appears to be that the misconduct hearing itself was flawed, so it is error to defer to its factual findings. The Court is unconvinced.

#### 1. Denial of Evidence

In his misconduct hearing, Cromer sought to compel the testimony of MBP's warden and legal coordinator. (Misconduct Hearing Report.) The hearing officer declined, finding, "The warden and legal coordinator are not necessary. There is no indication from the report or the prisoner [t]hat they were present at the time of the incident so are not witnesses. They could provide no insight into what occurred." (*Id.*)

Cromer's reason for trying to call these witnesses is unclear. He does not appear to dispute the hearing officer's finding that they were not present for the incident and thus could provide no insight. Rather, Cromer seems to have wanted to call these witnesses to challenge their general authority over him. In his statement to the hearing officer, Cromer argued, "[T]he warden ha[s] no legal authority to enforce my sentence; write misconducts or deny me any of my liberties . . . the judicial branch is forcing me . . . to stand trial without having an 'injured party.'" (Cromer's Statement to Hearing Officer 3, ECF No. 45-4.)

9

If Cromer meant to call these witnesses to challenge his overall sentence at MBP or the general way MBP disciplined him, his attempt was misguided. The hearing was held for a specific purpose—to litigate the misconduct ticket issued by Ricklefs. It is difficult to discern how Cromer's generalized complaints could have advanced that purpose.

If Cromer instead meant to challenge MBP's authority to issue the specific misconduct ticket, that was logically resolved by the misconduct hearing itself. The hearing officer found Cromer guilty of the threatening behavior Ricklefs accused him of. MDOC Policy Directive 03.03.105 requires an officer to write a misconduct ticket for this behavior. It is thus unclear what the warden and the legal coordinator could have added to the analysis.

The hearing officer found these witnesses' testimony unnecessary. Cromer has failed to convince the Court that the hearing officer was wrong. The Court thus concludes that Cromer was not "denied evidence" such that it should disregard the hearing officer's findings. This objection will be overruled.

### 2. Constitutional Claim Not Heard

Cromer seems to take issue with the fact that his constitutional claim—that Ricklefs wrote him a misconduct ticket in retaliation for his speech—was not heard by the hearing officer. The Court cannot discern how the hearing officer erred by not hearing this claim. Again, the purpose of the hearing was to determine whether Cromer engaged in the behavior Ricklefs accused him of. According to Cromer, Ricklefs began antagonizing him when she overheard Cromer complaining about START. This apparently escalated to both parties yelling and calling each other names and concluded with Cromer's threatening statements. Perhaps Ricklefs initiated this incident because she was upset at Cromer's speech, but that has no bearing on whether Cromer in fact made the threatening statements. In other words, "why" Cromer threatened Ricklefs does not matter; all

that matters is that he did. Thus, the constitutional claim was immaterial to the outcome of the hearing.

Logically, had the hearing officer found Cromer innocent of the misconduct, Cromer could have used that finding to bolster his retaliation claim. But the hearing itself was not concerned with the constitutional claim. This objection will be overruled.

### 3. Checkmate Doctrine

Cromer appears to argue that the magistrate judge improperly relied on the so-called "checkmate doctrine" when deferring to the hearing officer's factual findings. The checkmate doctrine refers to a categorical approach used by the Eighth Circuit. The doctrine "provides that when a prison body finds that a prisoner has committed 'an actual violation of prison rules' and the 'finding is based on some evidence of the violation, the finding essentially checkmates the retaliation claim.'" *Maben*, 887 F.3d at 261 (6th Cir. 2018) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (internal alterations omitted)). The Sixth Circuit has rejected this doctrine—"A finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim." *Id.* The Sixth Circuit instead uses the *Thaddeus-X* burden shifting framework described earlier in this Opinion.

The magistrate judge did not conclude that Cromer's misconduct guilt categorically barred his First Amendment claim. Instead, the magistrate judge used a factual finding by the hearing officer as evidence supporting Ricklefs's defense. In other words, the factual finding satisfied Ricklefs's burden of production on her proffered non-retaliatory motive—Cromer's threatening behavior. Whether this threatening behavior occurred is a material fact; if it had not occurred, Cromer would be well on his way to establishing pretext. But a hearing officer found that it did occur, and the magistrate judge was correct to consider that fact. And the magistrate judge did not stop there—he continued to analyze Cromer's retaliation claim under the appropriate burden-

11

shifting framework and found that Ricklefs had carried her burdens of production and persuasion while Cromer had not. This objection will be overruled.

### D. Causation

Cromer focuses several objections on the magistrate judge's analysis of the causation element of his retaliation claim. Again, none is persuasive.

#### 1. Ricklefs's Comments

Much of Cromer's causation analysis focuses on Ricklefs's comments in the lead up to the misconduct ticket. He claims that Ricklefs "yelled 'shut the fuck up!' to Cromer" and "called Cromer 'retarded.'" (Pl.'s Objs. 14.) To Cromer, "[t]hat is key to combining the but-for cause" because Ricklefs's "calling Cromer 'retarded' in a mental ward was before the allege[d] threat was made." (*Id.*) The precise legal error Cromer is asserting is unclear. He seems to argue that Ricklefs's comments were either themselves adverse action giving rise to a First Amendment retaliation claim or that they otherwise justified his subsequent threatening behavior.

If Cromer's contention is that Ricklefs's insulting comments were themselves adverse action, this appears to be the first time he has raised this argument. That alone is sufficient to dispense with the objection. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("absent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate"). In any case, Cromer points to no authority which would support the idea that an isolated incident of insulting language would "deter a person of ordinary firmness" from exercising his First Amendment rights. *See Thaddeus-X*, 175 F.3d at 32 (discussing the standard for finding adverse action). In any case, the Court concludes that these comments, while objectionable, were not so egregious as to constitute adverse action. To the extent Cromer makes this argument, the Court rejects it.

12

If Cromer's contention is instead that Ricklefs's comments goaded Cromer into his threatening behavior, this too is unconvincing. Again, "why" Cromer engaged in threatening behavior is less important than the fact that he did. When he did so, Ricklefs was required by MDOC policy to issue him a misconduct ticket. Perhaps Cromer could have established that Ricklefs orchestrated the retaliation by insulting him, knowing that he would threaten her, thereby providing a seemingly legitimate way to issue him a misconduct ticket. But Cromer does not establish this elaborate chain of events. As the magistrate judge noted, Ricklefs met her burden by providing a nonretaliatory reason for the misconduct ticket. Cromer did not meet this evidence with evidence of his own. For instance, "Cromer does not allege or show that Ricklefs usually let threatening behavior slide without consequence." (R&R 15.) And even if the Court were to assume that Ricklefs actually made the insulting comments Cromer alleges, it remains unconvinced that she did so as part of a complex retaliatory scheme.

Regardless of Cromer's reason for raising Ricklefs's comments, the Court can discern no legal or factual error. This objection will be overruled.

### 2. Lack of Evidence

Cromer argues that Ricklefs has failed to answer his allegations of a retaliatory motive and that "silence can only be equated with fraud or fraudulent concealment where there is a legal duty and moral duty to speak or where an inquiry left 'unanswered' would be intentionally misleading." (Pl.'s Objs. 16.) Again, it is difficult to know what to make of this objection. Ricklefs has in fact responded to Cromer's charge of retaliation by proffering a nonretaliatory motive for the misconduct ticket and substantiating that motive with the record from the misconduct hearing. This serves to rebut Cromer's retaliation claim. Ricklefs need not submit separate proofs specifically disclaiming retaliation—this is Cromer's claim, and it is his burden to establish retaliation. He has failed to do so.

Cromer also argues that "the fact that [Defendants] did not provide an attachment of record of show cause or loss should disturb this Court. The fact 'evidence' should have been attached to the Defendants' motion for summary in order to disprove Cromer's affidavit." (*Id.*) Cromer's reference to "show cause or loss" throughout his filings appears to relate to his belief that he has been imprisoned unlawfully. But the propriety of his imprisonment is not the subject of this lawsuit. It certainly has no bearing on his retaliation claim. Ricklefs's supposed failure to produce irrelevant evidence is thus immaterial to her defense.

Cromer's objections as to Defendants' failure to produce evidence are unconvincing. These objections will be overruled.

### 3. Treatment of Cromer's Factual Allegations

Cromer asserts that his factual allegations are to be taken as true and faults the magistrate judge for failing to do so. Cromer mistakenly cites the standard applicable on a motion to dismiss. At the present stage, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson* 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)).

Ricklefs has produced evidence supporting her nonretaliatory motive—the finding that Cromer was guilty of making threatening comments. That evidence is given preclusive effect under *Peterson*. This establishes that Ricklefs would have issued Cromer a misconduct ticket even in the absence of his protected conduct. Cromer has failed to meet that evidence with his own or otherwise "set forth specific facts showing that there is a genuine issue for trial." Thus, the magistrate judge did not err in examining the evidence before him and Ricklefs is "entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 394. This objection will be overruled.

### E. Immunity

#### 1. Qualified Immunity

Cromer objects to the magistrate judge's conclusion to grant qualified immunity to Ricklefs. Both the magistrate judge's analysis and Cromer's objections are co-extensive with the underlying constitutional violation. Because the Court agrees that Cromer has failed to establish that Ricklefs retaliated against him for his speech, it agrees that Ricklefs is entitled to qualified immunity. Cromer's objection will be overruled.

#### 2. Sovereign Immunity

Cromer objects to the magistrate judge's conclusion that Ricklefs is entitled to sovereign immunity to the extent Cromer sues her in her official capacity. He appears to confuse personal capacity claims, where sovereign immunity is not available as a defense, with official capacity claims, where it is available. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (explaining the differing immunity considerations between personal capacity and official capacity claims). The magistrate judge's analysis on this point is correct. Cromer's objection will be overruled.

## IV. SUBSEQUENT FILINGS

Since he filed his objections, Cromer has submitted two additional filings with the Court. The first is styled as a response to Defendants' response to Cromer's objections; in other words, it is essentially a sur-reply. (*See generally*, Pl.'s Sur-Reply, ECF No. 108.) "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances[.]" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014). Typically, a party seeking to submit a sur-reply must seek leave of the Court to do so. Cromer has not sought such permission. Nevertheless, Cromer's sur-reply appears to focus on his belief that he is imprisoned unlawfully. Again, that is not the subject of this case, and the Court need not consider the matter.

The second filing is titled "Letter for Judicial Notice" (ECF No. 109). Cromer appears to argue that this Court, the magistrate judge, and the hearing officer all lack subject matter jurisdiction over him because there is no evidence of "a record of loss or show cause[.]" (*Id.* at 1.) Once again, it is unclear what Cromer means by a "record of loss or show cause." In any event, the Court is satisfied that it has jurisdiction over the instant case because Cromer raised a federal question. *See* 28 U.S.C. § 1331.

He goes on to argue that the criminal conviction for which he was imprisoned is invalid by way of a violation of the Commerce Clause and of Article III maritime jurisdiction. Cromer's arguments are both unclear and immaterial. Again, the instant case does not test the legality of his confinement.

In short, the Court has considered Cromer's sur-reply and his Letter for Judicial Notice and determines they do not impact the disposition of this case. To the extent there are embedded objections or novel legal arguments, the Court rejects them.

## V. CONCLUSION

For the foregoing reasons, Cromer's objections to the R&R will be overruled. The Court will adopt the R&R as the opinion of the Court, grant Defendants their motion for summary judgment, and dismiss the case.

An order will enter consistent with this Opinion.

Dated: July 8, 2024                            /s/ Hala Y. Jarbou
                                               HALA Y. JARBOU
                                               CHIEF UNITED STATES DISTRICT JUDGE